## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMGEN INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 17-1006 (RDM) |
| ) | |
| THOMAS E. PRICE, M.D., ) | |
| in his official capacity as SECRETARY, ) | |
| UNITED STATES DEPARTMENT OF HEALTH ) | |
| AND HUMAN SERVICES, ) | |
| ) | |
| SCOTT GOTTLIEB, M.D., ) | |
| in his official capacity as ) | |
| COMMISSIONER OF FOOD AND DRUGS, ) | |
| FOOD AND DRUG ADMINISTRATION, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| TEVA PHARMACEUTICALS USA, INC.; ) | |
| BARR LABORATORIES, INC.; and ) | |
| WATSON LABORATORIES, INC., ) | |
| ) | |
| Intervenors. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiff Amgen respectfully moves for completion (or supplementation)[1] of the administrative record to include documents that were before FDA and necessarily considered by the agency in connection with its pediatric exclusivity decision for Sensipar.

As this Court will recall, Amgen is challenging FDA's denial of the six months of pediatric exclusivity for Amgen's drug Sensipar. A key element of that challenge turns on FDA's interpretation of the statutory phrase "fairly respond" as that term is used in the pediatric exclusivity statute, in reference to the agency's written request, 21 U.S.C. § 355a(d)(3). Prior to this Court's decision in *Merck & Co. v. FDA*, 148 F. Supp. 2d 27 (D.D.C. 2001), FDA had interpreted that term to mean one thing: perfect compliance. After this Court rejected that interpretation, FDA argues that it changed course sometime around 2006 and now interprets the phrase differently, to mean either perfect compliance *or* the award of what the agency calls "meaningful" labeling. *See* Transcript of June 2, 2017 Hearing (Tr.) at 67.

FDA's new interpretation, however, was not announced to the public. In fact, it was not publicly disclosed at all before the TRO hearing in this litigation, when counsel for the agency proffered one example of FDA's purported standard. *See* TRO Hearing Tr. 68–69. For that reason, in addition to its statutory argument about the meaning of "fairly responds," Amgen also has argued that the agency's promulgation of new interpretations through unannounced adjudications both is procedurally improper and violates basic due process concerns.

In an effort to justify its unpublished (and unpublicized) standard, FDA argued in its dispute resolution response that it has applied the standard with "consistency" since it was first

---

[1] For simplicity's sake, Amgen uses the term "supplementation" interchangeably with the term "completion," although some courts ascribe different meanings to the two terms. *See Ctr. for Native Ecosystems v. Salazar,* 711 F. Supp. 2d 1267, 1274 & n.7 (D. Colo. 2010); *Cape Hatteras Access Pres. All. v. Dep't of Interior*, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009).

- 1 -

developed in 2006. FDA Dispute Denial Ltr.[2] at 11-12 ("FDA's decision to deny PE to cinacalcet is consistent with the Agency's prior PE decisions."); ("Table 1 demonstrates the consistency with which FDA has applied the approach taken to determine whether PE should be granted"). Amgen and FDA have placed at issue several other drug products, which both parties have cited to support their contentions about the consistency of FDA's standard. FDA has acknowledged that the pediatric exclusivity determinations relating to those drug products are properly a part of the record, because FDA necessarily considered those pediatric exclusivity decisions in passing on (or arguing against) Amgen's dispute-resolution arguments. And indeed FDA has included *some* assortment of documents relevant to the pediatric exclusivity determination in the proposed AR.

But not all of them, oddly. In compiling the record, FDA appears to have decided that only the documents which an agency reviewer *actually cited or relied on* are properly part of the AR—such that other key documents pertinent to a drug product's pediatric exclusivity determination are *not* part of the AR. This is nonsensical, which is why it is not the standard in this Court. The standard, instead, is whether the relevant documents were "before the agency" and considered—whether directly or indirectly—by it at the time of its decision. The key documents supporting each pediatric exclusivity determination were of course before the agency and necessarily considered by it, at least indirectly, at the time of the agency's decision analyzing the pediatric exclusivity of that drug. That modest set of documents for each drug product therefore should be part of the record. Were it otherwise, the agency could cherry-pick its favorite documents in support of its decision, leaving out other pediatric exclusivity documents,

---

[2] The parties are still negotiating confidentiality issues in this case. If the Court would find it helpful to see a copy of the agency's decision on dispute resolution, Amgen will file it under seal pending finalization of those discussions.

and leaving a challenger (and a court) largely unequipped to examine the bona fides of FDA's arguments. That is not the way it works.

### *Factual Background*

In its first draft of the Administrative Record on August 15, FDA included some (but not all) of the documents pertinent to its consideration of Amgen's request for pediatric exclusivity for Sensipar. For example, FDA included the pediatric exclusivity determination checklist and the Review Division memorandum for Sensipar—but it did not include the Pediatric Review Board meeting minutes for Sensipar. The Pediatric Review Board minutes were available to the Pediatric Exclusivity Board and were highly relevant to the agency's application of its "fairly responds" standard to Sensipar, which requires assessment of the goals of the written request.

FDA also included some of the documents reflecting its consideration of the other requests for pediatric exclusivity that were expressly identified by both parties in this lawsuit and in the dispute resolution process on remand. But FDA took a scattershot approach to that as well; it included some types of documents (for example, meeting minutes for the pediatric exclusivity board) for one product, and other documents (for example, memoranda from the agency's Review Division) for another product.

Finally, FDA did not include any documents at all relating to any other pediatric exclusivity determinations not specifically identified by Amgen or the agency, as would have been necessary to support its determination that FDA had applied the unannounced standard with "consistency" across the scores of pediatric exclusivity decisions made between 2006 and 2017.

During the meet and confer period, Amgen requested that FDA include in the administrative record, in relevant part, three modest categories of documents that it believes are necessary to render the record complete: (i) the Pediatric Review Board meeting minutes for

- 3 -

Sensipar; (ii) the missing documents reflecting FDA's consideration of the requests for pediatric exclusivity for the eight comparator drugs identified by both parties; and (iii) any other documents reflecting the "consistency" of FDA's application of its "fairly respond" standard since it was adopted in 2006. Alternatively, Amgen requested that FDA confirm that any of the foregoing documents do not exist. In response, FDA took the position that the identified documents were not "considered by" or "before the agency" at the time of its decision.

*Argument*

The scope of materials that must be included in the administrative record is well settled—an agency must include all materials that it considered, "either directly or indirectly," so that the court has the benefit of the full record that was "before the agency." *See Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013*), aff'd,* 786 F.3d 46 (D.C. Cir. 2015) ("The 'whole' administrative record … consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position" so that the court may have the "full record that was before the agency at the time the decision was made"). *See also Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015), *on reconsideration*, 164 F. Supp. 3d 56 (D.D.C. 2016) ("A reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'").

An agency may not cherry-pick only those favorable documents upon which it actually *relied* when creating the record. *Dist. Hosp. Partners, L.P.*, 971 F. Supp. 2d at 20. Rather, the critical inquiry is *what was before the agency—*the "full record that was before the agency at the time the decision was made." *Id.* As common sense and longstanding precedent confirm, "an agency may not 'skew the record for review in its favor by excluding from that record

- 4 -

information in its own files which has great pertinence to the proceeding in question.'" *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010). *See also, e.g.*, *Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 187 F. Supp. 3d 100, 110 (D.D.C. 2016) (including as part of the record documents that contained raw data relied upon by agency because they "help to explain the conclusions drawn from the documents that *were* extensively cited" by the agency) (emphasis in original). And while an agency's designation of the administration record is given a presumption of regularity, that presumption "is just that—a presumption—and may be overcome." *Dist. Hosp. Partners*, 971 F. Supp. 2d at 23.

### 1. *Missing Sensipar Documents*

First and foremost, FDA has failed to include basic documents relating to Sensipar itself, such as the meeting minutes for the Pediatric Review Board's review of cinacalcet. Because FDA has asserted that the agency is now tasked with deciding not just whether the applicant adequately met the terms of the written request, but also whether the applicant "met the goals" of the written request by generating "meaningful" labeling, that analysis by definition must include review of the meeting minutes for the Pediatric Review Board. These meeting minutes, which were available to the Pediatric Exclusivity Board, would reflect on the critical issues in this case—the studies Amgen was requested to perform, their adequacy for supporting meaningful pediatric labeling, the manner in which they were executed, Amgen's request to change their enrollment targets and protocols, the data derived from them, and the sufficiency of that data to support Amgen's request for exclusivity. As a result, they were "before the agency" and necessarily considered during its deliberations on Amgen's request for pediatric exclusivity.

During the party's meet and confer, FDA acknowledged these documents exist, but stated that it has not yet determined whether it believes they are appropriately part of the record here.

In order to preserve its right to seek inclusion of these documents as FDA continues to consider its position over the weekend, Amgen requests that FDA be ordered to include them in the record in the event it does not do so voluntarily.

### 2. *Missing Documents Relating to the Eight Other Products Relied Upon by FDA*

During the dispute resolution process before the agency, both parties cited to eight other drug products that reflected FDA's pediatric exclusivity determinations over time, which each party contended supports their respective arguments. These eight other drug products are: Actiq, Calcijex, Mevacor, Orencia, OTC, Plavix, Zemplar, and Zomig. In its dispute resolution response, FDA expressly relied on these eight examples to justify its decision for Sensipar, claiming that these examples demonstrate "the consistency with which FDA has applied the approach taken to determine whether PE should be granted" that the agency applied to Sensipar. FDA Dispute Resolution Response at 12.

In order to make that determination, FDA must have considered the pediatric exclusivity files that were "before the agency" for each of those products. As a result, the key pediatric exclusivity documents for each product should be part of the administrative record. These include, at a bare minimum: (i) the Pediatric Exclusivity Board meeting minutes, (ii) the Pediatric Exclusivity checklist, (iii) the Review Division memoranda, and (iv) the annotated Written Request. Tellingly, FDA included all of these documents in the record for Sensipar (except for the Pediatric Exclusivity Board Meeting Minutes, which FDA stated do not exist because the meeting resulted in a denial of exclusivity).[3]

---

[3] This Court has previously cited to a Pediatric Exclusivity Checklist included by FDA in an Administrative Record as evidence that an applicant adequately responded to the written request and was entitled to pediatric exclusivity. *Ranbaxy Labs. Ltd. v. FDA*, 307 F. Supp. 2d 15, 18 (D.D.C. 2004) ("the FDA determined that Pfizer's pediatric studies adequately responded to the

But while FDA did include *some* of the key pediatric exclusivity documents for each of the other eight drugs, FDA did not include the same documents for each product. Instead, as the table below demonstrates, FDA chose to include certain key exclusivity documents for some products, but declined to do so for others. There is seemingly no logic to what FDA chose to include or exclude.

| Relevant Nonpublic P.E. Documents Contained in the Administrative Record | | | | |
|---|---|---|---|---|
| Drug | PE Board Meeting Minutes | Completed PE Determination Checklist | Review Division Memoranda | Annotated Written Request |
| Actiq | ++[4] | | | |
| Calcijex | | | **[5] | |
| Mevacor | | | | X |
| Orencia | | | | |
| OTC | | | | X |
| Plavix | X | | | |
| Zemplar | | | | X |
| Zomig | | | X | X |

The scattershot nature of the documents included for each product makes clear that the agency only included in the record those documents upon which the agency actually *relied* to support its analysis below. Thus, whoever identified those documents appears to have pulled only those particular documents that they found helpful to the agency to support its decision.

---

written request, and concluded that Pfizer was entitled to pediatric exclusivity for fluconazole under Section 505a. *See* AR, Ex. 32, Pediatric Exclusivity Determination Checklist").
[4] ++FDA has taken the position that these documents do not exist.
[5] **During the meet and confer process, FDA agreed to include these additional documents in the record, but has not yet done so.

(How else could the agency have decided to consider the meeting minutes for Plavix—but not for any other product, without first considering what was in the meeting minutes for the other products?)

Whether by inadvertence or design, it appears as though FDA has chosen to compile the record without some of the basic pediatric exclusivity materials pertinent to the very decisions FDA has acknowledged are properly a part of the record. *District Hosp. Partners*, 971 F. Supp. 2d at 20. But that is not the correct standard. *Id.* at 20 ("Nor may an agency exclude information simply because it did not rely on it for its final decision."). It cannot seriously be disputed that the key pediatric exclusivity documents identified above were "before the agency" and necessarily considered—even if indirectly—at the time the agency considered these other examples. The record should be supplemented to include these materials.

### 3.   *Other Pediatric Exclusivity Decisions*

Finally, in keeping with this Court's observation at the TRO hearing that it would be useful to know if there are examples where FDA applied a different standard to its pediatric exclusivity determinations, Tr. 69:1-4, Amgen also sought inclusion in the record of additional documents supporting or contradicting the agency's determination that it had consistently applied its unpublished definition of "fairly responds" since 2006. *See, e.g.*, Dispute Denial Ltr. at 9, 11, 12. Because FDA purported to justify its conduct here by pointing to the consistent (and nonpublic) nature of its decision making, the agency must necessarily have considered the other times where the agency applied the same standard—or a different one. And because the vast majority of the documents necessary to test that assertion are not public, neither Amgen nor this Court can adequately test the veracity of FDA's determination; we both are at the mercy of the agency. If the agency is unwilling or unable to include any other documents in the record

supporting or refuting its application of the secret "fairly respond" standard to other products, that will have consequences on the merits.

## Conclusion

For these reasons, this Court should order completion or supplementation of the administrative record to include the foregoing categories of documents.

Respectfully submitted,

   /s/ Catherine E. Stetson
Catherine E. Stetson (DC Bar # 453221)
Susan M. Cook (DC Bar # 462978)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5491
Fax: 202-637-5910
cate.stetson@hoganlovells.com
susan.cook@hoganlovells.com

*Counsel for Plaintiff Amgen Inc.*

Dated: September 1, 2017

**CERTIFICATE OF SERVICE**

    I certify that on September 1, 2017, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson